UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASPEN AMERICAN INSURANCE COMPANY *as subrogee of* 5515 D STREET 339 BOSTON, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COVENANT FIRE PROTECTION, INC., *et al.*,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 17-cv-10221-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

## **MEMORANDUM AND ORDER ON CITY POINT'S MOTION FOR SUMMARY JUDGMENT AND ASPEN'S MOTION FOR LEAVE TO AMEND**

BURROUGHS, D.J.

Plaintiff Aspen American Insurance Company, as subrogee of 5515 D Street 339 Boston, LLC ("Aspen") filed suit against Defendants Covenant Fire Protection, Inc. ("Covenant"), City Point Capital 339 D Street LLC ("City Point"), City Point Capital III GP, LLC, City Point Capital III, Limited Partnership, City Point Capital Investments, LLC, City Point Capital V GP, LLC, City Point Capital V Limited Partnership, City Point Capital V LP, City Point Capital West Broadway, LLC, Zade Associates, LLC, Zade Company, Inc., and Muzaffer Muctehizade, P.E. Aspen claims that Defendants failed to appropriately approve, design, and install a sprinkler system in a 24-unit residential apartment building located at 339 D Street, South Boston, Massachusetts (the "Property") and seeks to recover from Defendants amounts paid to 5515 D Street 339 Boston, LLC pursuant to an insurance policy for water damage to the Property.[1]

---

[1] On July 25, 2017, the Court approved the parties' joint stipulation dismissing Aspen's claims against City Point Capital III GP, LLC, City Point Capital III, Limited Partnership, City Point Capital Investments, LLC, City Point Capital V GP, LLC., City Point Capital V Limited

[ECF No. 1 (the "Complaint" or "Compl.")]. Currently pending are City Point's motion for summary judgment and Aspen's motion for leave to amend the Complaint. [ECF Nos. 41, 51]. For the following reasons, City Point's motion for summary judgment is GRANTED and Aspen's motion for leave to amend is DENIED with leave to renew.

I.  **BACKGROUND**

The following facts are either uncontroverted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 or stated in the light most favorable to Aspen, as the non-moving party.[2]

City Point developed the Property, a 24-unit residential apartment building located at 339 D Street, South Boston, Massachusetts. Compl. ¶ 18. Construction on the Property was completed on or about July 1, 2014. Id. ¶ 19.

On July 24, 2015, City Point, as the seller, and Akelius US LLC ("Akelius"), as the purchaser, executed a Purchase and Sale Agreement for the sale of the Property. [ECF No. 41-2 (the "Purchase and Sale Agreement" or the "Agreement"); ECF No. 42-1, Affidavit of Francis Adams ("Adams Aff.") ¶ 4]. Akelius is a "knowledgeable owner and operator of real estate properties." Purchase and Sale Agreement ¶ 5. Both City Point and Akelius negotiated the terms of the Purchase and Sale Agreement and were represented by counsel during those

---

Partnership, City Point Capital V LP, and City Point Capital West Broadway, LLC without prejudice. [ECF No. 24].
[2] The Court notes that while Aspen purports to controvert portions of City Point's statement of undisputed facts, Aspen frequently fails to cite any record evidence in support of its position. Controverted facts must be supported by reference to record evidence. See D. Mass. L.R. 56.1 ("A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."). The portions of City Point's statement of facts not specifically controverted with support in the record are deemed admitted. See Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) ("In the event that a party opposing summary judgment fails to act in accordance with the rigors that [a local rule governing summary judgment] imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.").

2

negotiations. Adams Aff. ¶¶ 3, 5. Paragraph 5 of the Agreement contains the following "as is" provision and disclaimer of warranties:

> Purchaser . . . has previously reviewed and considered the nature of this transaction, and has been afforded the opportunity to thoroughly investigate the Property and all aspects of the transaction. In electing to proceed with the transaction after the expiration of the Review Period, Purchaser shall be deemed to have determined that the Property . . . is satisfactory to Purchaser in all respects and is purchasing the Property in "as is" condition. Purchaser acknowledges and agrees that the Purchase Price was negotiated on the basis of this being an "as is" transaction; and the "as is" nature of the transaction was a material inducement for Seller to enter into this Agreement. Purchaser has and will rely solely on Purchaser's own independent investigations and inspections, and Purchaser has not relied and will not rely on any representation of Seller other than as expressly set forth in this Agreement. Purchaser further acknowledges and agrees that, except for the specific representations made by Seller in this Agreement, Seller has made no representations, is not willing to make any representations, nor held out any inducements to Purchaser other than those (if any) exclusively set forth in this Agreement; and Seller is not and shall not be liable or bound in any manner by any express or implied warranties, guaranties, statements, representations or information pertaining to the Property, except as may be specifically set forth in this Agreement.
> . . .
> Except as specifically set forth herein, Seller makes no representations or warranties as to the truth, accuracy, completeness, methodology of preparation or otherwise concerning any engineering or environmental reports or any other materials, data or other information supplied to Purchaser in connection with Purchaser's inspection of the Property (e.g., that such materials are complete, accurate or the final version thereof, or that such materials are all of such materials as are in Seller's possession). . . . Purchaser shall rely exclusively on its own independent investigation and evaluation of every aspect of the Property and not on any materials supplied by Seller. Purchaser expressly disclaims any intent to rely on any such materials provided to it by Seller in connection with its inspection and agrees that it shall rely solely on its own independently developed or verified information.

Purchase and Sale Agreement ¶ 5. The language of Paragraph 5 was not "boilerplate." Adams Aff. ¶ 6. Rather, the parties and their respective attorneys specifically negotiated that, *inter alia*, the Property was being sold "as is," that the Purchaser had the opportunity to thoroughly investigate all aspects of the Property, and that the Purchase Price was negotiated on the basis of the "as is" nature of the sale. Id. ¶¶ 6–7. Pursuant to the Purchase and Sale Agreement, on

3

October 15, 2015, City Point sold the Property to 5515 D Street 339 Boston, LLC ("5515 D Street") as Akelius' assignee. See Purchase and Sale Agreement; [ECF No. 41-3 at 5–6; ECF No. 41-4].

The Property was equipped with a wet fire sprinkler system. Compl. ¶ 20. On or about January 6, 2016 and February 15, 2016, the pipes to the Property's sprinkler system froze, causing flooding that damaged the Property. Id. ¶ 23. Aspen, 5515 D Street's insurer, reimbursed it for the damage caused by the flooding to the Property, and now brings this action against Defendants to recover those amounts paid. Id. ¶¶ 24, 29–30. In three identical counts, Aspen alleges that City Point, Covenant, Zade Associates, LLC, Zade Company, Inc., and Muzaffer Muctehizade, P.E. were "negligent, reckless, and/or otherwise failed to use due care during the course of" their "construction and installation of a fire sprinkler system" at the Property. See id. ¶¶ 25–42.

On May 24, 2018, City Point moved for summary judgment on the only claim against it. [ECF No. 41]. On June 14, 2018, Aspen filed an opposition to City Point's motion and moved for leave to amend its Complaint. [ECF No. 51].

## II. CITY POINT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

4

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. No. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

5

B.  **Discussion**

City Point argues that it is entitled to summary judgment because the Purchase and Sale Agreement contains an "as is" provision that forecloses a claim against City Point for negligence or recklessness as a matter of law. [ECF No. 43 at 8–13]. As set forth supra, Paragraph 5 of the Purchase and Sale Agreement provides that the Property was sold "as is," without any reliance on representations of City Point outside of the Agreement:

> Purchaser is a knowledgeable owner and operator of real estate properties, has previously reviewed and considered the nature of this transaction, and has been afforded the opportunity to thoroughly investigate the Property and all aspects of the transaction. In electing to proceed with the transaction after the expiration of the Review Period, Purchaser shall be deemed to have determined that the Property, including without limitation, the environmental condition of the Property, is satisfactory to Purchaser in all respects and is purchasing the Property in "as is" condition. Purchaser acknowledges and agrees that the Purchase Price was negotiated on the basis of this being an "as is" transaction; and the "as is" nature of the transaction was a material inducement for Seller to enter into this Agreement. Purchaser has and will rely solely on Purchaser's own independent investigations and inspections, and Purchaser has not relied and will not rely on any representation of Seller other than as expressly set forth in this Agreement. . . .

Purchase and Sale Agreement ¶ 5. City Point contends that, pursuant to Paragraph 5, 5515 D Street assumed the risk of all defects and shortcomings of the Property, including any defects in the design, construction, and installation of its sprinkler system, and is bound by the "as is" provision under Massachusetts law. [ECF No. 43 at 9].

In response, Aspen does not dispute City Point's construction of the "as is" provision, distinguish the case law cited by City Point as to the enforceability of "as is" provisions in Massachusetts, or otherwise provide any basis to find that Paragraph 5 does not bar its claim against City Point. Instead, Aspen argues that the Court should deny summary judgment because material issues of fact exist as to whether City Point directed Covenant to alter the design of the sprinkler system on the Property, and because Aspen has not yet completed discovery on this issue. [ECF No. 52 at 5–6, 9–10]. The Court finds that the issues of fact that Aspen raises are

6

irrelevant because the Agreement's "as is" provision forecloses Count I against City Point as a matter of law.

In Massachusetts, where there is no fraud or intentional misrepresentation, an "as is" clause that provides that a purchaser of property accepts the risks of his or her own investigation into that property is enforceable according to its terms. See Littauer v. Thompson, No. 932611, 1995 WL 1146831, at *4 (Mass. Super. Ct. 1995) (finding that plaintiffs were bound by a real estate contract's "'as-is' clause that was negotiated with the assistance of their attorneys" because "[w]here there was no fraud or material misrepresentation of fact, these provisions in the contract are to be enforced according to their terms" (citing Greenery Rehab. Grp., Inc. v. Antaramian, 628 N.E.2d 1291, 1293–94 (Mass. App. Ct. 1994)); see also Adar Invs., LLC v. Bayview Loan Servicing, LLC, 33 N.E.3d 1266, 2015 WL 3935695, at *1, *3 (Mass. App. Ct. June 26, 2015) (noting that an "as is" provision and clauses waiving reliance on "any information provided or to be provided by seller or any other party" are "enforceable where, as here, sophisticated business entities agree to them"); Corbett v. Bailey, 816 N.E.2d 182, 2004 WL 2359858, at *1–2 (Mass. App. Ct. Oct. 20, 2004) (holding that an experienced real estate developer "had no basis for claiming reliance on [a] broker's representations" where the developer "agreed to rely on his own research regarding the property and signed a purchase and sale agreement containing warranty disclaimers, [an] 'as is' merger clause, and an integration clause").

Here, the Complaint contains no allegations that City Point committed fraud or made any other intentional misrepresentation in connection with the Agreement.[3] Aspen does not allege,

---

[3] The Court does not construe Aspen's claim that "City Point was . . . reckless . . . during the course of inter alia, its construction and installation of a fire sprinkler system" to assert a fraud claim because Aspen has not pleaded fraud with sufficient particularity. See DeWolfe v.

7

for instance, that City Point lied about the condition of the sprinklers or its role in their construction, that it deprived Akelius or 5515 D Street, as Akelius' assignee, of its ability to make an independent determination of the condition of the Property, or otherwise undermined the integrity of the bargaining process. Rather, the evidence shows that the parties to the Purchase and Sale Agreement were sophisticated entities, experienced in commercial real estate transactions, and of equal bargaining position. They and their lawyers negotiated the "as is" provision and specifically agreed that the "Purchase Price was negotiated on the basis of this being an 'as is' transaction," and that "the 'as is' nature of the transaction was a material inducement for [City Point] to enter into this Agreement." Purchase and Sale Agreement ¶ 5.

Thus, given the nature of the transaction and totality of the circumstances surrounding the Purchase and Sale Agreement, the Court finds that the "as is" provision contained in Paragraph 5 of the Purchase and Sale Agreement is enforceable and forecloses Aspen's negligence claim against City Point. Even if, as Aspen asserts, City Point directed Covenant to alter the design of the sprinkler system on the Property,[4] in the absence of fraud, the plain language of the "as is" provision precludes 5515 D Street, as Akelius' assignee,[5] from recovering on a claim that City Point caused it harm because, by agreeing to purchase the Property "as is," 5515 D Street agreed

---

Hingham Ctr., Ltd., 985 N.E.2d 1187, 1191 n.8 (Mass. 2013) ("Although [the plaintiff's] amended complaint does not specify whether his misrepresentation claim is for negligent misrepresentation, or intentional or reckless misrepresentation, fraud has not been pleaded with sufficient particularity to state a claim for intentional or reckless misrepresentation . . . Accordingly, we treat the misrepresentation claim in [the plaintiff's] amended complaint as a claim for negligent misrepresentation.").

[4] The record evidence cited by Aspen for this proposition provides no support for its assertions. [See ECF No. 52 at 7 (citing ECF No. 51-2)].

[5] "[A]n assignee of contract rights must stand in the shoes of the assignor and has no greater rights than the assignor." Unisys Fin. Corp. v. Allan R. Hackel Org., Inc., 676 N.E.2d 486, 490 (Mass. App. Ct. 1997) (citing Graves Equip., Inc. v. M. DeMatteo Constr. Co., 489 N.E.2d 1010, 1012 (Mass. 1986)).

to make its own assessment of the bargain and assumed the risk that it might be wrong. Cf. Sound Techniques, Inc. v. Hoffman, 737 N.E.2d 920, 922, 926 (Mass. App. Ct. 2000) (holding that a merger clause providing that the plaintiff had not "relied upon any warranties or representations not set forth in this instrument" barred the plaintiff's negligent misrepresentation claim because there was "no reasonable basis for ignoring the plain language" of the contract in the absence of fraud, illegality, duress, or unconscionability). Accordingly, summary judgment on Count I is granted in favor of City Point.

## III. ASPEN'S MOTION TO AMEND

### A. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading "should be freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons for denying leave to amend under Rule 15(a)(2) "include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." Marchand v. Town of Hamilton, No. 09-cv-10433-LTS, 2011 WL 613699, at *1 (D. Mass. Feb. 9, 2011) (citing United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citations omitted). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under [Rule] 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

Once a scheduling order is in place and the court-imposed deadline for amendments has passed, however, "the liberal default rule [under Rule 15(a)] is replaced by the more demanding 'good cause' standard of [Rule] 16(b)." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir.

9

2004); see also Flores–Silva v. McClintock-Hernández, 710 F.3d 1, 3 (1st Cir. 2013) ("[First Circuit] case law clearly establishes that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely give[n]' standard, governs motions to amend filed after scheduling order deadlines." (quoting Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008)). "In evaluating whether a party has shown good cause, courts consider 1) 'the diligence of the party seeking the amendment' and 2) whether the opposing party would be prejudiced if modification were allowed." Ivymedia Corp. v. Ilikebus, Inc., 233 F. Supp. 3d 228, 230 (D. Mass. 2017) (quoting O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004)). "The rationale behind the good cause standard is that it provides courts with the 'devices necessary to manage [their] docket[s]' and facilitates 'effective case management.'" Id. (quoting O'Connell, 357 F.3d at 155).

**B.     Discussion**

By its motion, Aspen seeks leave to amend its Complaint in order to add claims against City Point for breach of contract and breach of the implied warranty of habitability and has attached its proposed Amended Complaint. [ECF No. 51-4]. For the reasons explained below, Aspen's motion is <u>DENIED</u> with leave to renew.

1.     Breach of Contract Claim

In Count II, Aspen proposes to add a breach of contract claim against City Point. [ECF No. 51-4 ¶¶ 24–29]. The proposed Amended Complaint introduces the following new allegations:

> 25. Upon information and belief, defendant City Point executed a Purchase and Sale Agreement for the Property dated July 24, 2015 with Akelius US, LLC. ("Akelius"), a foreign limited liability company with a usual place of business at

10

> 101 Federal Street, Suite 1900, Boston MA, 02110. A true and accurate copy is appended hereto as Plaintiff's Exhibit "AI".
>
> 26. City Point breached the Agreement by failing to provide a Property in compliance with all Federal, State and/or local ordinances, rules, statutes and/or regulations.
>
> 27. As a result of defendant City Point's foregoing breach of the Purchase and Sale Agreement, on or about January 6, 2016 and again on February 15, 2016, the Premises sustained severe water damage from the Flood causing plaintiff's subrogor to incur damages of $343,830.53 plus appropriate interest thereon from February 15, 2016.
>
> 28. Pursuant to a policy of insurance then in force and effect, and prior to the commencement of this action, plaintiff Aspen reimbursed its subrogor for the above loss, and thereby became subrogated, to the extent of its payment, to all of 5515 D's rights, remedies and causes of action as a result of the loss, including those against the defendants herein.

Id. ¶¶ 25–28. The proposed Amended Complaint nowhere identifies the provisions of the Purchase and Sale Agreement that Aspen contends were breached by City Point. See generally id. However, Aspen's motion to amend indicates that it claims City Point breached Paragraphs 1(c) and (d) and Paragraph 14B(a) of the Purchase and Sale Agreement by failing to install sprinkler systems in compliance with the National Fire Protection Association 13, a set of standards governing the installation of sprinkler systems, and by altering sprinkler plans that were originally approved by Covenant.[6] [ECF No. 52 at 6–7, 11–12]. City Point argues that the Court should deny Aspen's motion to amend as futile because the proposed Amended Complaint fails to state a breach of contract claim against City Point under Massachusetts law. [ECF No. 55 at 6–11]. The Court agrees.

First, Paragraph 1 of the Purchase and Sale Agreement, entitled "Purchase and Sale," provides, in relevant part:

---

[6] The Court notes that the relevant National Fire Protection Association standards are not in the record.

> Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller that certain parcel of real property (the "Land") located in the South Boston district of Boston, County of Suffolk, Commonwealth of Massachusetts, known and numbered as 339 D Street, as more particularly described in <u>Exhibit A</u> attached to this Agreement, together with the following property and rights owned by Seller: . . . (c) all contract rights pertaining to the ownership and operation of the Realty which are assignable and would affect the Property after Closing (as hereinafter defined), including but not limited to any and all contracts, agreements, warranties and guarantees, if any, relating to all or any portion of the Property, subject to the provisions of any applicable governmental laws, statutes, ordinances, bylaws, codes, rules and regulations (the "Contracts"); (d) all of the rights and interests of the Seller in any licenses, permits and approvals for the ownership, use, occupancy, maintenance and operation of the Property as well as all manuals, lists of prospective tenants, advertising materials and assignment telephone numbers, approvals, reports and studies (the "Permits") . . . .

Purchase and Sale Agreement ¶ 1. A plain text reading of Paragraph 1 shows that it deals with the property and rights that City Point agreed to sell Akelius pursuant to the Agreement. <u>Id.</u> Specifically, Paragraph 1(c) defines what contract rights relative to the ownership and operation of the Property City Point owned and agreed to sell Akelius, and Paragraph 1(d) defines the permits pertaining to the Property that City Point owned and agreed to sell Akelius. <u>See</u> <u>id.</u> Paragraph 1 does not give rise to warranties of any kind or otherwise suggest that the Property would be in compliance with federal, state, or local statutes, ordinances, or regulations, and, therefore, it cannot serve as the basis of the breach of contract claim asserted against City Point in the proposed Amended Complaint.

Second, Paragraph 14B of the Purchase and Sale Agreement provides, in relevant part:

> <u>Condition of Property at Closing</u>. (a) At the time of the Closing, the Property: (i) shall be in the same condition as it now is, reasonable use and wear thereof excepted; (ii) shall be in compliance with all applicable federal, state and local statutes, ordinances, bylaws, codes, rules and regulations; and (iii) not in violation of any restrictive covenant, agreement or other instrument of record affecting the Property. . . .

<u>Id.</u> ¶ 14B(a). Aspen contends that Paragraph 14B(a) created an obligation that warrantied that the Property would comply with applicable federal, state, or local statutes, ordinances, or

12

regulations. [ECF No. 52 at 12]. This assertion is incorrect. When read in conjunction with Paragraphs 14B(b), 14B(c), 14C, 14D, and 14E, it is clear that Paragraph 14B(a) is not a warranty, but instead describes some of the conditions on which Akelius could have refused to purchase the Property.[7]

Moreover, in Massachusetts, "[a]cceptance of a deed ordinarily merges all obligations in the purchase and sale agreement, except for those specified in the deed itself." Albrecht v. Clifford, 767 N.E.2d 42, 50 (Mass. 2002). Consistent with this rule of merger, Paragraph 26(e) of the Purchase and Sale Agreement provides:

> Unless expressly set forth herein, the terms and provisions of this Agreement shall not survive the Closing and such terms and provisions shall be deemed merged into the special warranty deed and extinguished at Closing.

Purchase and Sale Agreement ¶ 26(e). Massachusetts courts have held that substantially similar language in a purchase and sale agreement, in combination with a merger clause, failed to create a warranty or collateral obligation, and acceptance of the deed extinguished all of the seller's obligations under the purchase and sale agreement. See Albrecht, 767 N.E.2d at 50–51; Solomon v. Birger, 477 N.E.2d 137, 142–44 (Mass. App. Ct. 1985).[8] The Court accordingly finds that the

---

[7] Compare Purchase and Sale Agreement ¶ 14B(b) (providing the Purchaser's options to cancel the Agreement or proceed with the closing in the event that the Property is materially damaged or subject to an eminent domain taking prior to closing); id. ¶ 14(B)(c) (providing that the "Purchaser shall be entitled to inspect the Property within the ten (10) day period prior to the Closing Date to determine whether the condition thereof complies with the terms of this Agreement"); id. ¶ 14C (providing the parties rights in the event that, prior to closing, it is discovered or disclosed that any material representation by City Point will be untrue or City Point is unable to deliver title, make conveyance, or deliver the Property on the closing date); id. ¶ 14D (providing the parties' rights and remedies in the event that City Point is unable to remove defects in title, deliver possession, or make the Property conform by the Agreement's deadline); id. ¶ 14E (providing the Purchaser's right to close notwithstanding defects in title).

[8] There is an exception to the merger doctrine "for promises which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given." Urban v. Fed. Home Loan Mortg. Corp., No. 11-cv-10915-FDS, 2012 WL 245246, at *2–3 (D. Mass. Jan. 25, 2012) (quoting Snyder v. Sperry & Hutchinson Co., 333 N.E.2d 421, 427 (Mass. 1975)) (internal quotation marks omitted). This exception is inapplicable, however, as Aspen has not

covenants contained in Paragraph 14(B) did not survive the closing and, as such, cannot serve as the basis for Aspen's breach of contract claim.

Thus, the proposed Amended Complaint is futile as to Aspen's breach of contract claim, and the motion to amend is denied as to that claim. See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st. Cir. 2009) ("[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend.").

### 2. Implied Warranty of Habitability Claim

In Count III, Aspen proposes to add a claim against City Point for breach of the implied warranty of habitability. In Albrecht v. Clifford, the Supreme Judicial Court recognized the existence of an implied warranty of habitability in the sale of newly constructed homes by builder-vendors in Massachusetts. 767 N.E.2d at 45–46. (Previously, the implied warranty of habitability had only been recognized in connection with residential leases. See id.) To establish a breach of the implied warranty of habitability against a builder-vendor, a plaintiff must demonstrate that: "(1) he [or she] purchased a new house from the defendant-builder-vendor; (2) the house contained a latent defect; (3) the defect manifested itself only after its purchase; (4) the defect was caused by the builder's improper design, material, or workmanship; . . . (5) the defect created a substantial question of safety or made the house unfit for human habitation"; and (6) "the claim [was] brought within the three-year statute of limitations and the six-year statute of repose set forth in" Mass. Gen. Laws ch. 260, § 2B. Id. at 47. The purpose of this implied warranty "is to protect a purchaser of a new home from latent defects that create substantial

---

alleged any undertaking collateral to conveyance of the Property, such as an independent obligation on City Point to fix anything, to remove anything, or to add something to the Property.

14

questions of safety and habitability"; while its scope is "left largely to case-by-case determination, a home that is unsafe because it deviates from fundamental aspects of the applicable building codes, or is structurally unsound, or fails to keep out the elements because of defects of construction, would breach" it. Id.

City Point argues that Aspen's implied warranty claim must fail because "no Massachusetts court has ever held that the warranty of habitability [applies] in the commercial context." [ECF No. 55 at 12–16]. City Point further contends that Massachusetts "courts have specifically held that the implied warranty of habitability does not apply to a commercial lease," and cites numerous cases to that effect. [Id. at 12–15].

The Court agrees that whether the implied warranty of habitability runs between a builder-vendor and a commercial entity that invests in residential property is an open question under Massachusetts law, and finds that a sophisticated commercial investor is certainly differently situated from an individual purchasing a residential home for his or her own use. Moreover, City Point correctly points out that the Supreme Judicial Court has recognized in the commercial lease context that "there are significant differences between commercial and residential tenancies and the policy considerations appropriate to each," including that: "the bargaining power of commercial tenants at the lease drafting stage is ordinarily greater than that of residential tenants"; "[c]ommercial tenants tend to be more sophisticated about the terms of their leases"; "unlike residential tenants, commercial tenants generally purchase liability insurance"; and "modern notions of consumer protection," which have "played a role in the development of the law regarding residential leases . . . have no applicability to dealings between businesses." Humphrey v. Byron, 850 N.E.2d 1044, 1047–48 (Mass. 2006) (quotation marks omitted). The Court is not persuaded, however, that the Supreme Judicial Court would apply this

15

logic to categorically exclude sales of residential property to commercial entities from the ambit of the implied warranty of habitability, given that "the public policy of Massachusetts strongly favors the safety and habitability of homes," and the ultimate use of such property is residential. Trustees of Cambridge Point Condo. Tr. v. Cambridge Point, LLC, 88 N.E.3d 1142, 1152 (Mass. 2018). In any event, "the existence of an open question of law means that the claim is necessarily not futile," and, thus, is not a proper basis upon which to deny Aspen's motion to amend. Am. Aerial Servs., Inc. v. Terex USA LLC, No. 12-cv-00361-GZS, 2013 WL 1898541, at *1 (D. Me. May 7, 2013).

Nonetheless, even accepting as true all facts set forth in the proposed Amended Complaint and taking all reasonable inferences in Aspen's favor, the Court finds that amendment would be futile based on the facts asserted. The proposed Amended Complaint contains only the following relevant allegations:

> 31. Upon information and belief, defendant City Point performed and/or retained contractors to perform construction and install a fire sprinkler system at the Premises.
>
> 32. Defendant City Point is subject to liability to plaintiff for its breach of an implied warranty of habitability warranting that during the course of inter alia, its construction of the Premises it complied with applicable building code requirements, built in a workmanlike manner and is suitable for habitation.
>
> 33. As a result of defendant City Point's foregoing breach, on or about January 6, 2016 and again on February 15, 2016, the Premises sustained severe water damage from the Flood causing plaintiffs subrogor to incur damages of $343,830.53 plus appropriate interest thereon from February 15, 2016.

[ECF No. 51-4 ¶¶ 31–33.] Even assuming that Aspen has a viable claim for the implied warranty of habitability against builder-vendors, the proposed Amended Complaint contains no facts from which the Court could find that the Property was new and had not previously been inhabited, that the defect in the sprinkler system was latent, that the defect was caused by City Point's improper design, material, or workmanship, or that the defect created a substantial

16

question of safety or made the Property unfit for human habitation.  See id.  Because, in light of these deficiencies, the proposed Amended Complaint is futile due to the absence of a plausible basis for an implied warranty of habitability claim against City Point, the motion is denied.

The Court accepts Aspen's contention that it only became aware of facts supporting its proposed implied warranty of habitability claim during the course of discovery.  [ECF No. 52 at 5].  Given that City Point has not argued that it would be prejudiced if amendment were allowed, and assuming that Aspen would require no additional discovery on the implied warranty claim since it arises out of the same set of facts as Aspen's existing claims, the Court will allow Aspen to file a renewed motion to amend under Federal Rule of Civil Procedure 16(b) within 30 days of this order.  The Court notes that, should Aspen renew its motion, given that discovery has now closed and the Court's summary judgment order has been docketed, "the proposed amendment must be not only theoretically viable but also solidly grounded in the record," it will be "properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence," and it must be timely based on when the relevant facts became known to Aspen, Akelius, and/or 5515 D Street, as Akelius' assignee.  Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

## IV. CONCLUSION

For the foregoing reasons, City Point's motion for summary judgment [ECF No. 41] is GRANTED and Aspen's motion to amend [ECF No. 51] is DENIED with leave to renew as set forth herein.  Any renewed motion to amend shall be filed by March 28, 2019.

**SO ORDERED.**

February 26, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE